# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| KEVIN R. WADE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 05-3350-CV-S-GAF-SSA |
| | ) |
| JO ANNE B. BARNHART, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401, *et seq.*, 1381, *et seq.* Plaintiff's applications were denied initially. On January 25, 2005, following a hearing, an administrative law judge (ALJ) found that plaintiff was not disabled as defined under the Act at any time through the date of the decision. On July 19, 2005, after considering additional evidence, the Appeals Council denied plaintiff's request for review. Thus, the ALJ's decision stands as the final decision of the Commissioner.

The Court's role on review is "to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 435 (8th Cir. 2000)). In determining whether existing evidence is substantial, the Court considers "evidence that detracts from the Commissioner's

decision as well as evidence that supports it." *Id.* (citing *Prosch*, 201 F.3d at 1012). The Court "may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." *Id*. Rather, if the Court finds that "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings," the Court must affirm the decision of the Commissioner. *Id*. (quoting *Roth v. Shalala*, 45 F.3d 279, 282 (8TH Cir. 1995)).[1]

Plaintiff argues that the ALJ erred in discounting the June 2004 opinion of his treating physician, Dr. Dale. Plaintiff also argues that the ALJ improperly relied on the September 2004 opinion of the examining rheumatologist, Dr. Hayes. Based on a fibromyalgia diagnosis, Dr. Dale opined that plaintiff could lift five pounds frequently and ten pounds occasionally; stand, walk, or sit 30 minutes at a time and two hours total in an eight-hour work day; and push or pull repetitively for only 20 to 30 minutes. Dr. Dale further opined that plaintiff could occasionally balance, reach, handle, finger, and feel; that plaintiff could never climb, stoop, kneel, crouch, and crawl; that plaintiff could not work around heights, machinery, extreme temperatures, humidity, and vibration; and that plaintiff needs to rest in the prone position every 30 minutes for 10 to15 minutes.

The ALJ is charged with the responsibility of evaluating the medical evidence, and he may reject the opinion of any physician if the evidence supports a contrary conclusion. *See Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995); *Beasley v. Califano*, 608 F.2d 1163, 1165-66 (8th Cir. 1979). A treating physician's opinion must be supported by medically acceptable clinical or diagnostic

---

[1] Upon review of the record and applicable authority herein, defendant's position is found to be controlling. Much of defendant's brief is adopted without quotation noted.

2

data. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2005). The ALJ need not give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004); *see also Ellis v. Barnhart*, 392 F.3 988, 994 (8th Cir. 2005) ("[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner.").

The record reflects substantial evidence, including the June 2003 opinion of Dr. Ball, and the September 2004 opinion of Dr. Hayes, supporting the ALJ's decision to discount Dr. Dale's opinion. "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

Contrary to Dr. Dale's June 2004 opinion, Dr. Ball opined that plaintiff was not restricted in his ability to sit, stand, walk, lift, carry, or handle objects; that plaintiff's hearing and speaking abilities were intact; and that plaintiff could travel without difficulty. In support of his opinion, Dr. Ball noted that plaintiff walked without an assistive device, his gait and station were normal, and there was no evidence of a neurological abnormality. Plaintiff also had no swelling or muscle atrophy in his wrists, hands, or ankles; he had good range of motion in his shoulder and cervical spine; he could squat and heel-to-toe walk without difficulty, and his grip strength was normal and his fine-finger movement was intact.

Similarly, although rheumatologist Dr. Hayes agreed with Dr. Dale that plaintiff had generalized soft-tissue pain typical for fibromyalgia, he nevertheless concluded that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and stand or walk six hours in an eight-hour workday; that plaintiff could sit, push or pull, reach, handle, finger, and feel without limitation; that plaintiff could occasionally climb, balance, kneel, crouch, and stoop, but never crawl; and that plaintiff has no

3

environmental limitations. In so concluding, Dr. Hayes noted that plaintiff could get on and off the examination table without difficulty, his gait was normal, he walked without an assistive device, he had full extension in his fingers, wrists, knees, and elbows, and there was no evidence of muscle wasting or atrophy.

Dr. Hayes was the only rheumatologist to examine plaintiff and the ALJ was entitled to give his opinion substantial weight. *See* 20 C.F.R. §§ 404.1527(d)(5), 417.927(d)(5) (2005). ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist"); *Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998) ("more importantly, although a treating physician's opinion is considered to be significant, specialists' opinions are generally afforded more weight.").

The ALJ also properly noted that Dr. Dale's June 2004 opinion was inconsistent with his own course of treatment. For example, although Dr. Dale first diagnosed plaintiff with fibromyalgia in November 2002, and thereafter consistently noted that plaintiff had 18 of 18 tender points, Dr. Dale never referred plaintiff to a rheumatologist or chronic-pain specialist for treatment. He also did not administer trigger-point injections. *See Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) ("[W]here the treating physician's opinions are themselves inconsistent, they should be accorded less deference."); *cf. Brosnahan v. Barnhart*, 336 F.3d 671, 672 n. 1(8th Cir. 2003) (trigger-point injections are among the treatments for fibromyalgia); *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (Plaintiff's fibromyalgia found not to be disabling where she received 75 trigger-point injections that helped relieve her pain).

4

The ALJ's decision to discount Dr. Dale's June 2004 opinion regarding plaintiff's functional limitations is supported by substantial evidence.

Plaintiff also argues the ALJ did not properly evaluate his credibility when discrediting his complaints of disabling pain. When evaluating credibility, the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), and the regulations at 20 C.F.R. §§ 404.1529, 416.929 (2005), require the ALJ to give full consideration to all evidence relating to the claimant's subjective complaints, including such factors as the claimant's prior work records; observations by third parties and physicians regarding the claimant's disability, the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medications; and the claimant's functional restrictions. *See Polaski*, 739 F.2d at 1322.

Here, the ALJ, evaluating the evidence as a whole, concluded that plaintiff's complaints of disabling pain were only partially credible. Although plaintiff testified that he could not work due to spasms and pain in his joints, back, and shoulders, the record reveals that plaintiff drives 60 to 70 miles weekly, including weekly trips for groceries and multiple weekly trips to his parents, and that plaintiff walks without an assistive device, and can squat and heel-and-toe walk without difficulty. Plaintiff also lives alone, prepares his own meals, sometimes goes for walks, visits and watches movies with friends, and does his own laundry. Activities consistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001).

The ALJ also properly considered plaintiff's sporadic and generally low earnings prior to his alleged onset of disability. Although plaintiff alleges October 2001 as his onset of disability, the record reveals that plaintiff earned only $9,381.25 in 1998, $780.00 in 1999, $777.98 in 2000, and $63.56 in

5

2001. The Eighth Circuit has held that a poor work history characterized by low earnings may indicate a lack of motivation to work rather than a lack of ability. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001); *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993); *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996).

Finally, the ALJ noted that, despite complaints of disabling pain, plaintiff has received rather minimal treatment for his fibromyalgia. The record reveals that, although Dr. Dale found that plaintiff regularly displayed 18 of 18 tender points, Dr. Dale never referred plaintiff to a rheumatologist or chronic-pain specialist for treatment, or administered trigger-point injections. *See Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (allegations of disabling pain may be discounted due to inconsistencies such as minimal/conservative medical treatment).

It is not disputed that plaintiff experiences some pain, or that plaintiff evidences symptoms of fibromyalgia. However, the issue before the ALJ was whether plaintiff's fibromyalgia-related symptoms were so severe as to prevent him from working. *See Tennant v. Apfel*, 224 F.3d 869, 870 (8th Cir. 2000); *McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996). The ALJ articulated the inconsistencies upon which he relied in discrediting plaintiff's complaints of disabling pain. The ALJ's credibility findings are supported by substantial evidence.

Plaintiff next argues that the Appeals Council committed prejudice error by not remanding the case in light of the newly submitted August 2004 to February 2005 treatment records from Dr. Dale, and November 2004 treatment records from the Texas County Memorial Hospital emergency room.[2]

---

[2] Plaintiff also submitted to the Appeals Council a May 31, 2004 letter from a dietician. Plaintiff, however, submitted this letter, which predates the August 2004 administrative hearing, along with

Plaintiff further argues that the Appeals Council was required not only to evaluate these medical records as though they had been submitted to the ALJ, but also to opine expressly as to what impact these medical records have on the ALJ's decision.

Contrary to plaintiff's argument, the Appeals Council was not required to opine expressly as to what impact these newly submitted medical records have on the ALJ's decision. In support of his argument, plaintiff cites to two subsections of 20 C.F.R. § 404.1527. Plaintiff first cites to subsection (d)(2), which states that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Next, attempting to impute the requirement of subsection (d)(2) to the Appeals Council, plaintiff cites to subsection (f)(3), which states that "[w]hen the Appeals Council makes a decision, it will follow the same rules for considering opinion evidence as administrative law judges follow." Subsection (f)(3), however, is irrelevant in this case because the Appeals Council did not render a decision. Instead, the Appeals Council simply denied review.

Once it is clear that the Appeals Council has considered newly submitted evidence but denied review, as is the case here, the Court's role on review is limited to deciding whether the ALJ's decision is supported by substantial evidence on the record as a whole, including any evidence submitted after the ALJ's determination was made. *See Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir. 1995); *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). Although the new evidence from Dr. Dale and the Texas County Memorial Hospital is consistent with earlier medical records that document plaintiff's subjective complaints of pain and Dr. Dale's fibromyalgia diagnosis, these records do not undermine

---

various other Texas County Memorial Hospital records, to the ALJ back in June 2004.

the ALJ's ultimate conclusion that plaintiff retained the RFC to perform other work. Most notably, these newly-submitted records do not include an opinion from a rheumatologist or other chronic pain specialist that would warrant discrediting the credible opinion of Dr. Hayes.

The record further reflects that the ALJ properly determined plaintiff's RFC. The RFC is the most an individual can do despite to combined effect of all his credible limitations. *See* 20 C.F.R. §§ 404.1545, 416.945 (2005). The RFC is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. *See id*. It is the claimant's burden to prove his RFC at step four of the sequential evaluation, and it is the ALJ's responsibility to determine RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's description of his limitations. *See Young*, 221 F.3d at 1069 n.5.

Here, the ALJ found that plaintiff had the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk six hours during an eight-hour workday; and occasionally climb, balance, kneel, crouch, and stoop, but never crawl. Plaintiff argues that the ALJ erred in his RFC assessment because the ALJ failed to consider plaintiff's obesity. The ALJ, however, noted in his opinion that plaintiff weighed approximately 330 pounds and was obese, and that plaintiff had been advised by one physician to lose 100 pounds. The ALJ also expressly found that plaintiff's obesity qualified as a "severe" impairment. The ALJ did not fail to consider plaintiff's obesity. *See Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004) (finding the ALJ sufficiently considered plaintiff's obesity where "[t]he ALJ specifically referred to Talvis's obesity in evaluating his claim"). Further, the ALJ's RFC assessment is consistent with the September 2004 RFC assessment submitted by Dr. Hayes, who in connection with his RFC assessment, diagnosed plaintiff with obesity.

8

The ALJ's RFC assessment is consistent with the opinions of Drs. Ball and Hayes. Similarly, although Dr. Clarke opined that plaintiff should be considered eligible for medical relief and general assistance, the ALJ's RFC assessment is consistent with Dr. Clarke's statement that plaintiff was a candidate for vocational rehabilitation. Finally, the ALJ's RFC assessment is consistent with plaintiff's demonstrated functional abilities and reported daily activities, as well as the course of treatment he received from Dr. Dale.

Finally, the ALJ found that plaintiff could perform "other work" that exists in significant numbers in the national economy. After finding that plaintiff could not perform his past relevant work, the ALJ recognized that, at step five of the sequential evaluation process, the burden shifted to the Commissioner to show "other work" that plaintiff could perform. One way to satisfy this burden is through the testimony of a vocational expert. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) (2005). Such testimony, in the form of a response to a hypothetical question posed by the ALJ, constitutes substantial evidence supporting the Commissioner's decision, provided the ALJ's hypothetical includes all of claimant's credible physical and mental impairments. *See Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir. 1990).

The ALJ posed a hypothetical question based on all plaintiff's limitations he found supported by the record. The vocational expert opined that a claimant with the RFC described by the ALJ in his hypothetical question could perform other work, including medium/unskilled work as an automobile detailer (2,935 jobs in Missouri; 52,163 nationwide); light/unskilled work as a housekeeper (t,t00 jobs in Missouri; 231,000 nationwide); and light/unskilled work as a cafeteria attendant (1,950 jobs in Missouri; 93,110 nationwide).

9

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

                    /s/ Gary A. Fenner
                    GARY A. FENNER, JUDGE
                    United States District Court

DATED: February 22, 2006